PEOPLE v BURDEN

PEOPLE v JONES

Docket Nos. 64876, 64877. Decided March 30, 1981. On application by the people for leave to appeal the Supreme Court, in lieu of granting leave to appeal, reversed the judgments of the Court of Appeals and of the circuit court and remanded the case to the Marquette Circuit Court for further proceedings.

Patrick C. Burden and Joyce Jones were charged with delivery of controlled substances. The Marquette Circuit Court, John E. McDonald, J., granted the defendants' motion to exclude the testimony of Michael Hall, a member of the United States Air Force, on the ground that his participation in the case as an informant for the State Police violated the Federal Posse Comitatus Act. The Court of Appeals, Bronson and T. M. Burns, JJ. (D. F. Walsh, P.J., dissenting), affirmed (Docket Nos. 78-4440, 78-4441). The people apply for leave to appeal. In a per curiam opinion signed by Chief Justice Coleman and Justices Williams, Fitzgerald, Ryan, and Moody, the Supreme Court *held:*

1. The Posse Comitatus Act was passed to preclude the use of military personnel, acting as a military force, to assist in the execution of the laws. It was not intended to prevent a serviceman, acting as would any other citizen, from assisting civilian authority in enforcing the law. In this case, Hall was not in military uniform, acting under military orders or exercising any military authority. He was not a regular law-enforcement agent of the military nor does the record suggest that his usefulness to civilian authorities was in any way enhanced by virtue of his being a military man. His assistance was given to the State Police because he was led to believe that it would result in favorable treatment on charges that he sold three ounces of marijuana.

2. One must look to the nature of the assistance rendered the civilian authority in each case to determine if the aid may be characterized as military. Although the fundamental tenet of non-interference by the military in civilian affairs must be vigorously upheld, Hall's aid in this case was of a personal

nature, unrelated to his status as a military man, and was not of the kind sought to be precluded by the statute.

The judgments of the Court of Appeals and of the circuit court are reversed and the case is remanded to the circuit court for further proceedings.

Justice Kavanagh, joined by Justice Levin, dissented. He would deny leave to appeal because he is satisfied the trial court committed no error and the opinion of the Court of Appeals gives ample reason for affirming.

94 Mich App 209; 288 NW2d 392 (1979) reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Gary L. Walker,* Prosecuting Attorney, and *Mary C. Smith,* Assistant Attorney General, Prosecuting Attorneys Appellate Service, for the people.

*Rush M. Shortley* for defendants.

PER CURIAM. The defendants have been charged with delivery of controlled substances to Michael Hall, a member of the United States Air Force, who was acting at the time in cooperation with the Michigan State Police. The question is whether the State Police's use of Hall violated the United States Posse Comitatus Act.[1]

## I

Michael Hall was on active duty with the United States Air Force in 1977; he was stationed at K. I. Sawyer Air Force Base in Marquette County. When a warrant was issued charging him with selling three ounces of marijuana, he agreed to cooperate with the State Police in making purchases of controlled substances from the defendants. It was his personal decision that it would be in his best interest to cooperate as an informant.

[1] 18 USC 1385.

His willingness to assist the State Police, although condoned, was not induced, required or ordered by Air Force officials. Hall was led to believe his assistance would result in favorable treatment with respect to his own charge. The base commander was briefed as to Hall's involvement and merely approved his participation. He is said to have purchased lysergic acid diethylamide (LSD) and phencyclidine (PCP) from the defendants on July 26, 1977. The defendants were each charged with two counts of delivery of controlled substances.

At the preliminary examinations, Hall testified that when defendant Burden made LSD and THC (another controlled substance) available for purchase, he contacted the State Police. The State Police gave him $60 in marked $20 bills, searched him and his vehicle, and followed him to a mobile home occupied by the defendants. While the police watched, he entered the mobile home and made a purchase. Defendant Jones obtained what he thought was the THC from a bedroom and defendant Burden, the LSD from outside. Hall then paid Burden for the controlled substances.

The defendants filed a motion to prohibit testimony of Michael Hall on the basis that Hall's participation in state law enforcement in Michigan violated the Federal statute. The circuit court agreed with the defense and ordered the exclusion of Hall's testimony in this prosecution. The Court of Appeals affirmed,[2] with Judge WALSH dissenting.

## II

The Federal statute in question provides:

[2] 94 Mich App 209; 288 NW2d 392 (1979).

"Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both."

The statute dates from the post-Civil-War period, and Judge WALSH explained its purpose well:

"The enactment of the Posse Comitatus Act in 1878 was primarily the result of southern outrage at the use of Federal troops in the South following the Civil War. With the end of armed hostility between the North and South came a period of political domination by Northerners of their fellow citizens in the South. Large numbers of Federal troops were extensively used in the South to enforce the law and to support the new carpet-bag governments. The Reconstruction Act of 1867 implemented Congressional belief that military rule was necessary in the southern states. It was the 'outrageous meddling' of Federal troops in the 1876 presidential elections in the South which precipitated the proposal and passage of the act." 94 Mich App 218-219; 288 NW2d 392 (1979).

Examination of the Senate debate on the enactment is illuminating. The proponents were seeking to overrule an Attorney General's opinion on which these post-Civil-War actions had been based.[3] Senator Merrimon of North Carolina said:

"The people are interested in the law; it is their law; it is their duty to execute it, and the Army, their Army —for it is their Army at last—is only to be used in extreme cases and in the last resort. * * *

[3] Attorney General Caleb Cushing had said that the posse comitatus included every person over the age of 15, whatever his occupation, "including the military of all denominations, militia, soldiers, marines, all of whom are alike bound to obey the commands of a [civilian] sheriff or marshal". 6 Opinions of the Attorneys General of the United States 466, 473 (May 27, 1854).

"Now, sir, we know by sad experience that the Army has been used not once, but time and time again, in a way that not a court in this nation would sanction. The Army has not only been used in the collection of the internal revenue in a way not authorized by law, but it has been used and prostituted to control elections repeatedly. * * * The object of this section is to prevent a like prostitution of the Army in the future."[4]

Senator Windom asked if the act would prevent a soldier from coming to the defense of one who is being murderously assaulted; Senator Merrimon responded:

"If a soldier sees a man assaulting me with a view to take my life, he is not going to stand by and see him do it; he comes to my relief not as a soldier, but as a human being, a man with a soul in his body, and as a citizen."[5]

But, said Senator Merrimon, "If there had been a thousand soldiers there they could not have interposed as soldiers" and "[a] general * * * could not have commanded" them to act. Similarly, Senator Hill of Georgia said:

"Of course, there are occasions in all countries where under the laws it is the duty of every man to save life, to save property, to suppress crime. * * * But that is not the question involved here. The question is not involved in this section whether soldiers would be guilty of crime when they would suppress a crime like any other citizen would suppress it. The point is in their character as an army."[6]

We agree with the analysis of Judge WALSH:

---

[4] 7 Congressional Record 4245 (1878).

[5] *Id.*

[6] *Id.*, 4247.

"In cooperating with and assisting the civilian police agency, Hall was not acting as a member of the military. He was acting only as a civilian. His military status was merely incidental to and not essential to his involvement with the civilian authorities. He was not in military uniform. He was not acting under military orders. He did not exercise either explicitly or implicitly any military authority. Moreover, Hall was not a regular law-enforcement agent of the military, * * * nor does the record suggest that Hall's usefulness to civilian authorities was in any way enhanced by virtue of his being a military man. As we read the record, the assistance rendered by Hall was in no way different from the cooperation which would have been given by a private citizen offered the same opportunity to avoid criminal prosecution. To paraphrase Senator Hill, Hall's character as 'part of the Army or the Air Force' was irrelevant to the assistance he rendered to the civilian authorities."

One must look to the nature of the assistance rendered the civilian authority in each case to determine if the aid may be characterized as military. Although we share with the learned trial judge the firm conviction that the fundamental tenet of non-interference by the military in civilian affairs must be vigorously upheld, we conclude that Hall's aid under the facts of this case was of a personal nature, unrelated to his status as a military man. His activity was not of the kind sought to be precluded by the United States Congress when it enacted this statute.

Consequently, in lieu of granting leave to appeal, under GCR 1963, 853.2(4), we reverse the judgments of the Court of Appeals and the circuit court and remand the case to Marquette Circuit Court for further proceedings.

COLEMAN, C.J., and WILLIAMS, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.

Kavanagh, J. *(dissenting).* I would deny leave to appeal.

I am satisfied that the trial court committed no error in excluding the testimony of Airman Hall, and the opinion of Judge T. M. Burns for the Court of Appeals, 94 Mich App 209; 288 NW2d 392 (1979), gives ample reason for affirming his decision.

Levin, J., concurred with Kavanagh, J.