[No. D001317. Fourth Dist., Div. One. Dec. 17, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID MASON WELLS, Defendant and Appellant.

COUNSEL

Marjorie F. Cohn, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John W. Carney and Gil P. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LEWIS, J.—David Mason Wells appeals after the trial court denied his motion to suppress evidence (Pen. Code, § 1538.5), he pled guilty to selling cocaine (Health & Saf. Code, § 11352) and the trial court granted him

probation. Wells seeks reversal contending the Posse Comitatus Act[1] (18 U.S.C.A., § 1385), proscribing wilful use of the military to execute the laws, was violated and thus his suppression motion should have been granted.

In September 1982, with the goal of taking illegal drug dealers off the streets of the City of Oceanside and thus minimizing the flow of drugs into nearby Camp Pendleton, the Naval Investigative Service (N.I.S.) initiated what N.I.S. calls an Initiative Criminal Investigative Operation by soliciting the assistance of the Oceanside Police Department (O.P.D.). Bud Aldridge, special agent in charge of Camp Pendleton N.I.S., contacted O.P.D.'s Lieutenant Dunne, and together they worked out an operational plan they believed was feasible. O.P.D. never solicited the assistance of N.I.S. with regard to the operation.

The operational plan called for the N.I.S. agents, all military policemen, to be used as confidential informants immediately under the supervision and surveillance of a particular O.P.D. officer. Solicitation for drugs was to be done by N.I.S. agents. Any detention or arrest of a suspect was to be handled by an O.P.D. officer. The N.I.S. agent always was accompanied within a matter of feet or yards by an O.P.D. officer. On most occasions, the N.I.S. agent was equipped with a concealed transmitter. O.P.D. furnished prerecorded money to N.I.S. agents to make drug purchases and, once a purchase was completed by an N.I.S. agent, the suspected drugs were turned over to an O.P.D. officer to be impounded and analyzed. O.P.D. paid nothing to N.I.S. for its assistance. Several operations were carried out according to the plan between September 1982 and July 1983.

On June 14, 1983, N.I.S. Agent Derrel Murkerson was working undercover in the Buccaneer Beach area of Oceanside. O.P.D. Officer William L. Ziegler was observing within hearing distance of Murkerson. Murkerson met Wells and asked him if "Nick" was in the area. On Wells' inquiry, Murkerson explained he wanted to see if he could buy some cocaine from "Nick" as he had before. Wells said he could help out Murkerson, who told Wells he wanted a half gram of cocaine. Wells said no problem, and proceeded to consummate a sale of cocaine for $50, delivering to Murkerson a bindle of cocaine wrapped in two $5 bills representing change for the $60 Murkerson had given Wells. Murkerson delivered the bindle and money to O.P.D. Officer Ziegler. Analysis showed the bindle contained .4 gram of

---

[1]Posse comitatus is "[t]he power or force of the county. The entire population of a county above the age of fifteen, which a sheriff may summon to his assistance in certain cases, as to aid him in keeping the peace, in pursuing and arresting felons, . . ." (Black's Law Dict. (5th ed. 1979) p. 1046.)

cocaine. At Buccaneer Park on July 5, 1983, Ziegler arrested Wells along with two other cocaine sales suspects.[2]

## I

■ Wells contends the regular and systematic assistance by military policemen to civilian law enforcement, in the execution of civilian narcotics laws, is a violation of the Posse Comitatus Act, and article I, section 8 of the United States Constitution. This violation, he asserts, requires application of the exclusionary rule to his cocaine sale transaction with the result the evidence against him should be suppressed.

Article I, section 8, of the United States Constitution invests in Congress the power "[t]o provide for calling forth the militia to execute the laws of the Union." In response to apparent abuses in the use of the military during the reconstruction era,[3] in 1878 Congress adopted the Posse Comitatus Act which, as since amended, reads: "Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both." (18 U.S.C.A., § 1385.)

■ Though referring only to the Army and Air Force branches of military service, the Posse Comitatus Act applies to all branches of the federal military, of course including the Navy. (*United States* v. *Walden* (4th Cir. 1974) 490 F.2d 372, 375, cert. den. 416 U.S. 983.)

---

[2]As a result of the joint operation by N.I.S. and O.P.D., O.P.D. Officer Ziegler also arrested Nick Raymond Galvan and Frank Pena at Buccaneer Park on July 5, 1983, for cocaine sales. Carlos Martinez Castillo similarly was arrested there a few days later. All were charged along with Wells in the same accusatory pleading alleging violations of Health and Safety Code section 11352.

[3]Historical background of the Posse Comitatus Act is contained in *People* v. *Burden* (1981) 411 Mich. 56 [303 N.W.2d 444, 446-447], which begins: " 'With the end of armed hostility between the North and South came a period of political domination by Northerners of their fellow citizens in the South. Large numbers of Federal troops were extensively used in the South to enforce the law and to support the new carpetbag government. The reconstruction act of 1867 implemented Congressional belief that military rule was necessary in the southern states. It was the "outrageous meddling" of Federal troops in the 1876 presidential elections in the South which precipitated the proposal and passage of the act.' [Citation.]" (303 N.W.2d at p. 446.)

*People* v. *Blend* (1981) 121 Cal.App.3d 215, quotes at greater length from *Burden,* and further informs us: "The origins of the act are dramatic and extend historically to the Boston Massacre in 1770, and the Boston Tea Party in 1773. The Judiciary Act of 1789 contained the first posse comitatus legislation in the United States. [Meeks, *Illegal Law Enforcement: Aiding Civil Authorities in Violation of the Posse Comitatus Act* (1975) 70 Mil.L.Rev. 83.] The Posse Comitatus Act followed abuses in the use of federal troops to enforce the laws in the southern states after the Civil War; '[t]he policy that military involvement in civilian law enforcement should be carefully restricted has deep roots in American history,' and arguably has constitutional underpinnings. [Fn. omitted.] (*United States* v. *Walden, supra,* 490 F.2d 372, 375-376; . . .)" (121 Cal.App.3d at p. 223.)

 On the matter of application of the Posse Comitatus Act in the decade before the 1981 *Blend* decision, that court tells us: "Few cases have found violations; of these, one is a civil matter (*Wrynn* v. *United States* (E.D.N.Y. 1961) 200 F.Supp. 457). *No case has been found in which the court actually excluded evidence on the violation ground.* No authority has been found indicating that a prosecution was pursued under 18 United States Code section 1385 for a violation of the act.

"The cases from other jurisdictions, federal and state, interpreting the act do not agree on the type of involvement of military personnel in civilian law enforcement required to constitute a violation of the statute." (*People* v. *Blend, supra,* 121 Cal.App.3d 215, 223; italics added.)

In light of the language, background and apparent purposes of the Posse Comitatus Act to stop state use of the federal militia, particularly in policing state elections (see *Chandler* v. *United States* (1st Cir. 1948) 171 F.2d 921, 936) and to prevent the subjugation of citizens to the exercise of military power of a regulatory, proscriptive or compulsory nature (see *United States* v. *Casper* (8th Cir. 1976) 541 F.2d 1275, 1278, affirming Dist. Ct. standard announced in *United States* v. *McArthur* (D.N.D. 1975) 419 F.Supp. 186, 194), we find no violation of the act in the facts of this case. Considering the N.I.S. initiation of the program and the participation of N.I.S. agents as undercover informants only, not as officers arresting civilians, it is clear neither the Posse Comitatus Act nor its dual purposes were violated here.

Detailed analysis leading to this conclusion is unnecessary because, even if we were to find a violation of the Posse Comitatus Act, suppression of the evidence would not be permissible under the current state of the law. Federal law does not require exclusion of evidence obtained as a result of a violation of the Posse Comitatus Act. (See *United States* v. *Walden, supra,* 490 F.2d 372, 377; see also *People* v. *Blend, supra,* 121 Cal.App.3d 215, 223, 228, fn. 6, and cases cited.) There is no policy reason to make the statutory violation an exclusionary rule.

Judgment affirmed.

Wiener, Acting P. J., and Kintner, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied March 27, 1986. Bird, C. J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.