[No. 7046-8-III. Division Three. August 21, 1986.]

THE CITY OF AIRWAY HEIGHTS, *Respondent,* v. DONALD
S. DILLEY, *Appellant.*

*James F. Irwin* and *Cooney & Cooney,* for appellant.

*Steven C. Miller, City Attorney,* and *Leslie A. Grove, Assistant,* for respondent.

McINTURFF, J.—Donald Dilley appeals his conviction for driving while intoxicated alleging, *inter alia,* that his conviction was improperly based upon evidence seized in violation of 18 U.S.C. § 1385, which prohibits the use of military personnel in civil law enforcement matters. We affirm.

On June 2, 1984, Airway Heights police officers were informed by radio dispatch of a possibly intoxicated driver in a Willys Jeep–type vehicle. Officers H. B. Anderson and Fred Taylor subsequently spotted and followed a vehicle matching this description. Initially, no unusual driving was observed, but the officers watched Mr. Dilley drive into a service station located on Highway 2, and then later paced him at 65 miles per hour in a 55 mile per hour zone. Officer Anderson stopped Mr. Dilley and, upon contacting him, noted a strong odor of intoxicants, that his speech was slurred and his eyes were watery and bloodshot. Upon stepping from his vehicle, Mr. Dilley was observed to be staggering slightly and unstable. On each of the field sobriety tests, Mr. Dilley was unsteady and could not balance himself. In the officer's view, Mr. Dilley's driving ability was impaired.

Mr. Dilley was arrested for allegedly driving while intoxicated and, although not informed of his constitutional rights, was taken to the Fairchild Air Force Base for a Breathalyzer test, conducted with a United States Air Force Breathalyzer machine. Upon arrival, officers informed Mr. Dilley of his constitutional rights; he then requested to communicate with an attorney. After several unsuccessful attempts to reach counsel by phone, Mr. Dilley agreed to a Breathalyzer test. Officer Anderson asked Airman First

Class Denise Garcia to administer the test using Air Force equipment. Following the test, which indicated a .21 percent blood alcohol reading, Mr. Dilley was charged with driving while intoxicated. RCW 46.61.502. Mr. Dilley was found guilty by a jury.

First, Mr. Dilley claims the court erred in refusing to exclude results of the Breathalyzer test administered at Fairchild Air Force Base. He posits that the Breathalyzer test was conducted in violation of 18 U.S.C. § 1385, which forbids the use of Air Force personnel as a "posse comitatus",[1] and therefore should be excluded.

Responding to apparent abuses in the use of the military during the reconstruction era, Congress adopted the Posse Comitatus Act in 1878 which, as since amended, reads:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any party of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

18 U.S.C. § 1385. No Washington case has discussed the application of this statute. Within the last 10 years, however, this act has been used in a variety of factual situations in both state and federal courts by defendants seeking to exclude evidence allegedly obtained in violation of the statute. There are no cases found in which the court actually excluded evidence because of a violation of the statute. Nor is there authority that a prosecution was pursued for violation of the act. In applying the statute, we must examine whether a violation occurred and, if so, whether evidence seized is admissible as evidence.

██ In determining what military involvement is for-

---

[1] Posse comitatus constitutes the power or force of the county, consisting of the entire population of the county above the age of 15, which a sheriff may summon to his assistance in certain cases, for example aiding him in keeping the peace, or pursuing and arresting felons. Black's Law Dictionary 1046 (5th ed. 1979); Furman, *Restrictions Upon Use of the Army Imposed by the Posse Comitatus Act,* 7 Mil. L. Rev. 85, 87 (1960).

bidden, we look to the historical underpinnings of the act. Congress passed the Posse Comitatus Act to limit allegedly excessive use of federal troops to preserve order and maintain the governments of Republican carpetbaggers in the southern states. Note, *Posse Comitatus Act: Reconstruction Politics Reconsidered,* 13 Am. Crim. L. Rev. 703, 705 nn.16, 17 (1976) (quoting 5 Cong. Rec. 2114 (1877) (remarks of Congressman Atkins, sponsor of the legislation)); *see also* Lorence, *The Constitutionality of the Posse Comitatus Act,* 8 U. Kan. City L. Rev. 164, 165 (1940); *Bissonette v. Haig,* 776 F.2d 1384, 1387–90 (8th Cir. 1985), *reh'g granted,* 788 F.2d 494 (1986); *People v. Burden,* 411 Mich. 56, 303 N.W.2d 444, 446 (1981); *Jackson v. State,* 572 P.2d 87, 90–91 (Alaska 1977); *People v. Wells,* 175 Cal. App. 3d 876, 879 n.3, 221 Cal. Rptr. 273, 274 (1985). While protecting civilians from being subject to the exercise of regulatory or proscriptive military authority, the act also is aimed to protect the military from overuse by local civil law enforcement authorities. *See United States v. Walden,* 490 F.2d 372, 375–77 (4th Cir. 1974); *Wrynn v. United States,* 200 F. Supp. 457, 464 (E.D.N.Y. 1961); *see generally United States v. Casper,* 541 F.2d 1275 (8th Cir. 1976), *cert. denied,* 430 U.S. 970, 52 L. Ed. 2d 362, 97 S. Ct. 1654 (1977).

In *Casper,* the court had to determine whether military involvement in law enforcement activities during the 1973 Wounded Knee uprising violated the act. Setting a standard to determine whether a violation of the act had occurred, the court stated at page 1278:

> Were Army or Air Force personnel used by the civilian law enforcement officers at Wounded Knee in such a manner that the military personnel subjected the citizens to the exercise of military power which was regulatory, proscriptive, or compulsory in nature, either presently or prospectively?

(quoting *United States v. McArthur,* 419 F. Supp. 186, 194 (D.N.D. 1975), *aff'd sub nom. United States v. Casper, supra*). This test was based upon language found in *Laird*

*v. Tatum,* 408 U.S. 1, 11, 33 L. Ed. 2d 154, 92 S. Ct. 2318, 2324, *reh'g denied,* 409 U.S. 901, 34 L. Ed. 2d 165, 93 S. Ct. 94 (1972), which involved a claim that First Amendment rights were chilled because of the presence of an Army data gathering system purportedly providing surveillance of lawful civilian activity. The Court in *Laird* rejected the claim, ruling that the mere existence of the data gathering system infringed no rights since there had been no objective harm or anticipated future harm.[2]

Accordingly, when these concepts are evaluated in the present legal framework, military involvement does not violate the Posse Comitatus Act unless it "actually regulates, forbids, or compels some conduct on the part of those claiming relief." *Bissonette,* at 1390; *see also Wells,* 221 Cal. Rptr. at 275. Merely furnishing military personnel, cameras and planes to fly surveillance and providing advice to those dealing with the disorder does not connote the active participating proscribed by the act. *Lee v. State,* 513 P.2d 125 (Okla. Crim. App. 1973) (military personnel must assume greater authority than that permitted to civilians), *cert. denied,* 415 U.S. 932, 39 L. Ed. 2d 490, 94 S. Ct. 1445 (1974); *Hildebrandt v. State,* 507 P.2d 1323 (Okla. Crim. App. 1973); *Hubert v. State,* 504 P.2d 1245 (Okla. Crim. App. 1972); *cf. State v. Sanders,* 303 N.C. 608, 281 S.E.2d 7, 10 (surrender to civilian authorities of evidence discovered in routine military investigation constitutes only passive involvement and not a violation), *cert. denied,* 454 U.S. 973, 70 L. Ed. 2d 392, 102 S. Ct. 523 (1981); *State v. Nelson,* 298 N.C. 573, 260 S.E.2d 629 (1979), *cert. denied sub nom. Jolly v. North Carolina,* 446 U.S. 929, 64 L. Ed. 2d

---

[2]*United States v. Jaramillo,* 390 F. Supp. 1375 (D. Neb. 1974), *appeal dismissed,* 510 F.2d 808 (8th Cir. 1975) and *United States v. Banks,* 383 F. Supp. 368 (D.S.D. 1974), *appeal dismissed sub nom. United States v. Means,* 513 F.2d 1329 (8th Cir. 1975) are similar to several cases involving the application of the act to military involvement in law enforcement during the 1973 Wounded Knee uprising. The Wounded Knee cases are factually distinguishable from the circumstances presented here and provide little guidance in evaluating Mr. Dilley's claim.

282, 100 S. Ct. 1867 (1980).

Based upon the language, history and apparent purposes of the Posse Comitatus Act, which is to have local authorities handle local matters, preclude use of the federal militia, particularly in policing state elections, and to prevent citizen control through military power, we find no violation of the act here. Officer Anderson transported Mr. Dilley to the Fairchild Air Force Base front gate for testing because Fairchild was the closest and most convenient place to administer the examination. Airman Garcia conducted the Breathalyzer test in the same way a civilian technician would have conducted it. She did not force Mr. Dilley to take the test. Thus, it cannot be said that the Posse Comitatus Act was violated, given the practically nonexistent military force used here. While it might be wrong to engage military force to enforce civilian law, engaging military expertise alone does not violate the act. Since Airman Garcia was merely operating the machine and not forcing Mr. Dilley to take the test, her conduct was acceptable. We find this dispositive of the issue, hence we do not address whether evidence seized in violation of the act must be suppressed.

■ Next, Mr. Dilley claims the court erred in failing to dismiss the case because he was denied his right to counsel when he was unable to contact an attorney before submitting to the Breathalyzer test. One accused of a crime has a Sixth Amendment right to counsel at any critical stage in a criminal prosecution. *Heinemann v. Whitman Cy.,* 105 Wn.2d 796, 800, 718 P.2d 789 (1986) (citing *Tacoma v. Heater,* 67 Wn.2d 733, 409 P.2d 867 (1966)). But the right to counsel attaches only when formal judicial criminal proceedings have been initiated against a defendant. *Heinemann; State v. Dictado,* 102 Wn.2d 277, 294, 687 P.2d 172 (1984); *State ex rel. Juckett v. Evergreen Dist. Court,* 100 Wn.2d 824, 828, 675 P.2d 599 (1984). In *Heater,* the court found a critical stage in the criminal prosecution after the police officers had arrested the defendant, conducted field sobriety tests, questioned him, and actually charged him

with an offense involving intoxication. In *Juckett,* at 829, the defendant's right to counsel was determined not to apply to one arrested for driving while intoxicated until after the citation was issued.

In the most recent pronouncement on this subject, *Heinemann,* the defendant had neither been arrested nor received a citation at the time of the field sobriety test and therefore no constitutional right to counsel existed. *Heinemann,* at 800. Examining the issue in light of *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), the court concluded that the *Miranda* protections are limited to situations in which the accused is compelled to make a testimonial communication, and do not apply when the accused is the source of real or physical evidence. *Heinemann,* at 800–01 (citing *State v. Franco,* 96 Wn.2d 816, 639 P.2d 1320 (1982)); *Mercer Island v. Walker,* 76 Wn.2d 607, 458 P.2d 274 (1969); *State v. West,* 70 Wn.2d 751, 424 P.2d 1014 (1967).[3]

The Washington rules of criminal procedure expand this constitutional right by guaranteeing the right to counsel "as soon as feasible after the defendant is taken into custody . . . or when he is formally charged, whichever occurs earliest." CrR 3.1(b)(1). At the earliest possible opportunity, one in custody who desires counsel must be provided access to a telephone, the telephone number of a public defender or officer responsible for assigning counsel, and any other means necessary to assure communication with a lawyer. But these rules require more an opportunity, rather than actual communication with an attorney. In *State v. Staeheli,* 102 Wn.2d 305, 685 P.2d 591 (1984), the court dealt

---

[3]Mr. Dilley alleges his constitutional rights were violated because he was not advised of his right to an attorney immediately at the scene of the arrest. Some questioning was conducted by Officer Anderson while en route to Fairchild Air Force Base. However, Mr. Dilley's argument is apparently contradicted by his own testimony that he was read his constitutional rights while at the scene of the stop. Furthermore, a driver who has not been arrested, but is suspected of being under the influence of alcohol, need not be given *Miranda* warnings before being requested to perform field sobriety tests. *Heinemann,* at 801.

with circumstances similar to the instant case and held at page 310:

> If an accused has been allowed reasonable access and has made no contact with counsel, but the test can no longer be delayed, the driver must decide on his own whether he will submit to the test.

The court based this ruling upon the fact that under the implied consent statute, RCW 46.20.308(1), the officer's demand that one submit to a Breathalyzer is not open for debate or negotiation, but rather for a simple yes or no. *Staeheli,* at 309–10.

Here, reasonable efforts were made by officers to connect Mr. Dilley with prospective counsel. Several calls were made by Officer Anderson, Mr. Dilley's wife, and Mr. Dilley, but an attorney could not be reached. Although Officer Anderson did not disclose to Mr. Dilley the 24–hour on–call phone number of the public defender's office, Mr. Dilley was provided the phone number of James Hatch, the regularly appointed public defender in the City of Airway Heights, as well as another attorney. After attempts to call these attorneys, Officer Anderson asked Mr. Dilley if there was anyone else whom he would like contacted. Mr. Dilley did not request any further attempts. Officer Anderson then obtained Mr. Dilley's signature on the consent to take the test police report rights form.

Given these attempts to procure counsel, and that Mr. Dilley was not cited for driving while intoxicated until after the Breathalyzer test was conducted, we hold his right to counsel was not violated. Reasonable but unsuccessful attempts to contact counsel for Mr. Dilley satisfy his right to counsel because he understood his constitutional rights, denied the need for further attempts to contact counsel, and agreed to take the Breathalyzer and answer interrogatories.

The judgment of the Superior Court is affirmed.

Pursuant to RCW 2.06.040, the remaining contentions and the court's answers to those contentions, having no

precedential value, will not be published.

GREEN, C.J., and THOMPSON, J., concur.