[No. 55942–2. En Banc. July 6, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. LARRY K. SHORT, *Appellant.*

*J. Byron Holcomb,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *Diane F. Russell, Deputy,* for respondent.

DOLLIVER, J.—In March 1986, the Naval Investigative Service (NIS) instigated a joint drug operation with local law enforcement agencies in Bremerton, Washington. In

January 1987, NIS brought in Agent Jerry Kramer, a civilian Navy employee, to work undercover. He was not present in Kitsap County at the request of any state or local law enforcement agency. Kramer became employed as a bouncer at Noodles, a local restaurant where drug contacts were made. In this position, Kramer checked the ID of persons entering the bar and determined that about 80 percent of those entering Noodles were military personnel. While employed at Noodles, Kramer met James Corso and, later, the defendant, Larry K. Short.

On April 1, 1987, Kramer bought one–eighth ounce of cocaine from Corso. On April 10, 1987, Corso indicated that Kramer could buy more cocaine through Short. Kramer and Corso waited at Noodles until Short arrived. After a brief discussion, Kramer gave Short $250 to get some cocaine. Corso and Short left Noodles together and returned an hour later. Corso entered the bar and delivered a foil package to Kramer.

Kramer delivered the alleged cocaine, along with information about Corso and Short, to his immediate supervisor, Agent Kocina. A Washington State Patrol Crime Laboratory analysis revealed that the substance was not cocaine but lidocaine, a noncontrolled substance.

Kramer, still undercover, complained to Short about the counterfeit and demanded reimbursement. Short promised to replace the fake cocaine with real cocaine and subsequently made a telephone call. Soon after, four men came into Noodles to talk with Short. Short then made vague threats to Kramer. Kramer, still undercover, responded that he did not need to be threatened and he just wanted Short to make good. Kramer left Noodles and did not see Short again until the trial.

Short was arrested later by local authorities and convicted under the "burn" statute, RCW 69.50.401(c), for selling a substituted substance in lieu of a controlled substance. The Court of Appeals certified his appeal to the Supreme Court. We accept certification and affirm.

I

Short argues the NIS violated 18 U.S.C. § 1385 (the posse comitatus act) or 10 U.S.C. § 375 by initiating undercover investigations for local law enforcement agencies, and therefore it was error to allow the testimony of Agent Kramer.

The posse comitatus act declares:

> Whoever . . . willfully uses any part of *the Army or the Air Force* as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

(Italics ours.) 18 U.S.C. § 1385.

The posse comitatus act stems from the post–Civil War era when the Army was allegedly called on in the South to "stabilize the Republican governments of carpetbaggers and scalawags." *Jackson v. State,* 572 P.2d 87, 90 (Alaska 1977). In subsequent years, the act was amended to include the Air Force when it became separate from the Army. Proposed amendments to add naval forces were not adopted. *Jackson,* at 93.

▊ Although the Fourth Circuit in *United States v. Walden,* 490 F.2d 372 (4th Cir. 1974) found the act applicable to all armed services, more recently the Ninth Circuit in *United States v. Roberts,* 779 F.2d 565 (9th Cir. 1986) declined to go beyond the plain language of the act and held that the act prohibits only use of the Army and Air Force in civilian law enforcement, and not use of the Navy. *Roberts,* at 567. We also decline to go beyond the plain language of the act. We hold the posse comitatus act refers solely to the Army or the Air Force and not to the Navy and thus does not apply in this case.

10 U.S.C. § 375 is a corollary to the posse comitatus act. At the time of the events of this case, the statute read:

> The Secretary of Defense shall issue such regulations as may be necessary to insure that the provision of any assistance (including the provision of any equipment or facility or the assignment of any personnel) to any civilian law enforcement

official under this chapter does not include or permit direct participation by a member of the Army, Navy, Air Force, or Marine Corps in an interdiction of a vessel or aircraft, a search and seizure, arrest, or other similar activity unless participation in such activity by such member is otherwise authorized by law.

10 U.S.C. § 375. This statute was not violated. Although not pertinent to this case, it should be noted a 1988 amendment dropped the "interdiction" phrase and emphasized overt assertions of power such as search and seizure or arrest. *See* National Defense Authorization Act, Fiscal Year 1989, Pub. L. No. 100–456, § 375, 102 Stat. 1918, 2045 (1988); *see also* 10 U.S.C.A. § 375 (Supp. 1989).

 To violate the statute there must be direct participation by a member of a listed military body. *See Jackson v. State, supra.* Case law discloses that the use of equipment, personnel, and information is generally not considered direct participation under 10 U.S.C. § 371 *et seq.* or under the posse comitatus act. *United States v. Roberts, supra; United States v. Bacon,* 851 F.2d 1312 (11th Cir. 1988); *Airway Heights v. Dilley,* 45 Wn. App. 87, 92, 724 P.2d 407 (1986). Because the limitations on the use of the armed services contained in 10 U.S.C. § 375 correspond closely with those in the posse comitatus act, the same analysis should apply.

Here, Kramer did not arrest Short, and any personnel, equipment, and information provided to local law enforcement did not constitute direct participation. Also, Kramer was not a "member" of the Navy. A member of the naval service is defined as a person "appointed or enlisted in, or inducted or conscripted into, the Navy or Marine Corps." 10 U.S.C. § 5001(a)(3). This infers more than employment.

 Moreover, Washington courts have distinguished military personnel acting "in the same way [as] a civilian" from those exerting military authority under the posse comitatus act. *Airway Heights,* at 92. *See also Lee v. State,* 513 P.2d 125, 126 (Okla. Crim. App. 1973); *Burkhart v.*

*State,* 727 P.2d 971, 972 (Okla. Crim. App. 1986) (no substantial violation of the posse comitatus act where undercover agents purchasing drugs in an investigation "'did not assume any greater authority than that of a private citizen . . .'" in the purchase) (quoting *Lee v. State, supra).*

Kramer was not a commissioned officer but a civilian hired as an undercover agent. He purchased the alleged cocaine undercover without assuming greater authority than a private citizen in making the purchase. We find 10 U.S.C. § 375 was not violated.

■ Even if there had been a violation, however, the admission of Agent Kramer's testimony would not be in error because evidence obtained in violation of the act is not excluded unless there is an unauthorized assertion of military authority or a need for exclusion as a deterrent to future violations. *Taylor v. State,* 645 P.2d 522 (Okla. Crim. App. 1982); *Lee v. State, supra; United States v. Roberts, supra; United States v. Walden, supra.* We find neither of these here.

II

Short argues that Kramer was required to give a *Miranda* warning during the undercover investigation once there was probable cause for arrest because the conversations thereafter became interrogations.

■ Although we outlined a 4–part test in *State v. Dictado,* 102 Wn.2d 277, 687 P.2d 172 (1984) for determining when a *Miranda* warning is required, which included a probable cause element (*Dictado,* at 291), we subsequently adopted the *Berkemer* test in both *State v. Harris,* 106 Wn.2d 784, 725 P.2d 975 (1986), *cert. denied,* 480 U.S. 940 (1987) and *Heinemann v. Whitman Cy.,* 105 Wn.2d 796, 718 P.2d 789 (1986). Under *Berkemer, Miranda* safeguards apply as soon as a suspect's freedom of action is curtailed to a "'. . ."degree associated with formal arrest."'" *Harris,* at 789 (quoting *Berkemer v. McCarty,* 468 U.S. 420, 440, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (1984); *California v. Beheler,*

463 U.S. 1121, 1125, 77 L. Ed. 2d 1275, 103 S. Ct. 3517 (1983)). *See also Miranda v. Arizona,* 384 U.S. 436, 444, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

*Berkemer* "rejected the existence of probable cause as a factor in the determination of custody and in so doing it reaffirmed that its focus was on the possibility of coercion alone". *Heinemann,* at 807 (citing *Berkemer,* at 435 n.22). The sole inquiry therefore has become whether the suspect reasonably supposed his freedom of action was curtailed. *See State v. Watkins,* 53 Wn. App. 264, 274, 766 P.2d 484 (1989) (quoting *Berkemer,* at 442) ("'[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.'"). Thus, in *Harris* we found that a *Miranda* warning is not required when the questioning is part of a routine, general investigation in which the defendant voluntarily cooperated but is not yet charged. *State v. Harris, supra* at 789.

We find that the situation here did not warrant a *Miranda* warning. Kramer did not arrest or intend to arrest Short. Kramer was also undercover, so any military connection could not have an implied coercive effect. Furthermore, Short had control of the conversation and when Short became abusive, Kramer left. These facts show that Short's freedom was not curtailed. For these reasons, the custody element required for a *Miranda* warning does not exist.

Finally, the trial court found that Kramer's conversations with Short were "for the purposes of protecting his role as an undercover agent. It was not for the purpose of eliciting additional information or to elicit the statements incriminating to the commission of a crime." There is sufficient evidence in the record to uphold this finding.

We hold the NIS did not violate the posse comitatus act or 10 U.S.C. § 375 in its investigation. We also hold that *Miranda* warnings were not required.

The trial court is affirmed.

CALLOW, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, DURHAM, and SMITH, JJ., concur.