1998-NMCA-180

972 P.2d 1

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Willie Marcell COOPER, Defendant–
Appellant.**

No. 18506.

Court of Appeals of New Mexico.

Oct. 27, 1998.

Certiorari Denied, No. 25,476,
Dec. 15, 1998.

Tom Udall, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Nina Lalevic, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

ARMIJO, Judge.

{1} Defendant appeals his conviction for one count of trafficking in cocaine contrary to NMSA 1978, Section 30–31–20(A)(1990). He raises two issues on appeal. The first issue presents us with an opportunity to examine the Federal Posse Comitatus Act, 18 U.S.C. § 1385 (1994)(PCA). Defendant claims that trial counsel was ineffective for failing to pursue a motion to suppress evidence based on an alleged violation of the PCA, and, among other claims, his trial counsel's failure to object to testimony regarding the identification of Defendant from an allegedly impermissibly suggestive photo array. The second issue concerns the sufficiency of the evidence supporting Defendant's conviction. Because we hold that Defendant has not made a prima facie showing of ineffective assistance of counsel and that the conviction is supported by sufficient evidence, we affirm.

## I. BACKGROUND

{2} In July 1994, Defendant, a civilian, was arrested for allegedly selling six rocks of crack cocaine to Joseph Tobier (Tobier), a member of the United States Air Force, in a controlled transaction. At the time, Tobier was working as an undercover agent for the Office of Special Investigations (OSI) of the United States Air Force in a joint narcotics investigation with the Metro Drug Task Force of the Clovis Police Department. The investigation targeted suspected cocaine trafficking at 204½ Sheldon (Sheldon residence) in Clovis, New Mexico. The OSI and the Clovis Police Department had information that military members were purchasing crack cocaine at the property.

{3} Based on the Air Force's involvement in the investigation through undercover agent Tobier, Defendant filed a pretrial motion to suppress evidence he alleged was

obtained in violation of the PCA. However, defense counsel abandoned the motion prior to trial, concluding that the "present state of the law" failed to support the motion to suppress. The trial court accordingly dismissed the motion.

{4} At trial, the State presented the testimony of Tobier and two officers with the Metro Drug Task Force. Sergeant Michael Reeves testified that in July 1994, he was approached by the OSI, and based upon information that members of the United States Air Force were involved in the trafficking and purchasing of crack cocaine in the Clovis area, the OSI and the Metro Drug Task Force "initiated a joint investigation" of the suspected activities. To assist in the investigation, the OSI provided the services of Tobier, an Air Force member, who had been trained by the OSI to be an undercover informant in narcotics investigations. The subject of the investigation was the Sheldon residence, a known crack house, where several arrests had been made in the past.

{5} Tobier served as an undercover informant in the joint investigation for approximately two years. His participation was strictly voluntary, and he received no compensation for his part in the investigation. While assisting in the investigation, Tobier made at least fifteen to twenty controlled purchases at the Sheldon residence. As an undercover agent, Tobier would "hang out" at the Sheldon residence, become acquainted with suspected cocaine dealers, and give them his cell phone number as a prospective buyer. Upon receiving a call, he would immediately contact the Clovis Police Department and the OSI and obtain further instructions on setting up a controlled buy.

{6} At trial, Tobier testified that prior to July 21, 1994, he had observed and spoken with Defendant at the Sheldon residence on several occasions. Approximately one week before July 21, 1994, Defendant approached Tobier about a possible drug sale, and the two got into Tobier's vehicle to discuss the details of the transaction and exchange phone numbers.

{7} On July 21, 1994, Tobier received a call from Defendant on his cell phone. Tobier immediately notified OSI agents and Clovis police officers about the call. At the Metro Drug Task Force office, Tobier briefed the police officers and the OSI agents on his telephone conversation with Defendant. Clovis police officers then instructed Tobier on how to make the controlled purchase, searched Tobier's vehicle, placed a transmitter on him, and provided him with money to purchase the drugs. Tobier then arranged to meet Defendant at the Sheldon residence later that day. Tobier was kept on surveillance by Clovis police officers while he drove to and from the address.

{8} At the Sheldon residence, Defendant came out to Tobier's vehicle in the driveway and asked him how much crack cocaine he wanted. Tobier responded that he wanted $100 worth. Defendant then left and returned a few minutes later with six rocks of crack cocaine which he showed to Tobier. Tobier then paid Defendant for the crack cocaine, which he wrapped in a piece of paper and put in the ashtray, and returned to the office of the Metro Drug Task Force. Tobier turned over the evidence to agent Jay Longley of the Metro Drug Task Force, and the evidence was then tested by the Department of Public Safety Crime Lab. The parties stipulated to the lab's findings that the substances were in fact cocaine. Upon returning to the military base, Tobier prepared a written report of the undercover operation which he submitted to the OSI; a copy of the report was forwarded to the Clovis Police Department.

{9} Tobier testified that he was certain that Defendant was the individual who sold him crack on July 21, 1994, and identified Defendant in court. Tobier testified that in identifying individual suspects from the Sheldon residence, he would remember their aliases and keep a "mental picture" of their physical appearance and features. At the Metro Drug Task Force office, he would identify the suspects from a photo array. He would point out the photographs of the individuals he recognized from the Sheldon residence, and only afterwards, when the photographs were turned over, would he see the names of the individuals printed on the back side.

{10} Defendant was the only witness who testified for the defense. He testified that he did not sell crack cocaine to Tobier on July 21, 1994. Following the trial, the jury returned a guilty verdict against Defendant on one count of trafficking in cocaine. This appeal ensued.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

■ {11} To prevail on a claim of ineffective assistance of counsel, Defendant " 'must prove that defense counsel did not exercise the skill of a reasonably competent attorney and that this incompetent representation prejudiced the defendant's case, rendering the trial court's results unreliable.' " *State v. Crain*, 1997–NMCA–101, ¶ 24, 124 N.M. 84, 946 P.2d 1095 (quoting *State v. Lopez*, 1996–NMSC–036, ¶ 25, 122 N.M. 63, 920 P.2d 1017). Defendant fails to establish a prima facie case of ineffective assistance of counsel where "a plausible, rational strategy or tactic can explain the conduct of defense counsel." *State v. Swavola*, 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct.App.1992). A reviewing court will not second guess the trial strategy and tactics of defense counsel. *Churchman v. Dorsey*, 1996–NMSC–033, ¶ 18, 122 N.M. 11, 919 P.2d 1076.

### 1. Failure to Pursue Motion To Suppress Evidence Based On Violation of PCA

■ {12} Defendant asserts that defense counsel was ineffective for waiving a motion to suppress evidence seized in alleged violation of the PCA. In determining whether the failure to pursue a motion to suppress constitutes ineffective assistance of counsel, we address: (1) whether the record supports the motion on the ground asserted; and (2) whether a reasonably competent attorney could have decided that the motion was unwarranted. *See State v. Martinez*, 1996–NMCA–109, ¶ 33, 122 N.M. 476, 927 P.2d 31. In other words, we look to the law and the facts of the case to determine if a reasonably competent attorney could have decided that the motion to suppress was not merited. *See State v. Stenz*, 109 N.M. 536, 538, 787 P.2d 455, 457 (Ct.App.1990). Applying these standards to the case before us, we conclude that the facts and the law fail to support the suppression of evidence on PCA grounds, and therefore, defense counsel was not ineffective for abandoning the motion to suppress evidence.

{13} The PCA makes it a criminal offense, "except in cases and under circumstances expressly authorized by the Constitution or Act of Congress," to "willfully" use "any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws[.]" 18 U.S.C. § 1385. Congress passed the PCA in 1878 to restrict the use of military power to enforce civil laws in the South during the Reconstruction Era. *See People v. Burden*, 411 Mich. 56, 303 N.W.2d 444, 446 (Mich.1981). Following the Civil War, federal troops were frequently called upon to enforce the laws in the former Confederate states and to assert the control over the new governments. *See id.* Ultimately, the intrusion of federal military troops in the South during the 1876 presidential election led to the passage of the PCA. *See id.* Thus, underlying the PCA is the continuing recognition of the threat to civil liberties caused by the use of military personnel to execute civilian laws. *See generally* Annotation, Brian L. Porto, *Construction and Application of Posse Comitatus Act (18 USCS § 1385), and Similar Predecessor Provisions, Restricting Use of United States Army and Air Force to Execute Laws*, 141 A.L.R. Fed. 271, § 2[a] (1997) (hereinafter Annotation, 141 A.L.R. Fed. 271).

{14} Modern courts have employed various tests to determine at what level military involvement in civilian law enforcement violates the PCA. For example, some courts have held that the PCA is violated only where civilian law enforcement officers have made "direct active use" of the military to execute the laws. *See, e.g., United States v. Hartley*, 796 F.2d 112, 114 (5th Cir.1986); *United States v. Red Feather*, 392 F.Supp. 916, 924 (D.S.D.1975). Other courts have observed that a violation of the PCA occurs only where the use of the military "pervades" the activities of civilian law enforcement officers. *See, e.g., United States v. Bacon*, 851 F.2d 1312, 1313 (11th Cir.1988); *United*

*States v. Jaramillo,* 380 F.Supp. 1375, 1379 (D.Neb.1974). Still other courts have held that the PCA is violated where the participation of the military subjects citizens to the exercise of military power which is "regulatory, proscriptive or compulsory." *See United States v. McArthur,* 419 F.Supp. 186, 194 (D.N.D.1976). However, most courts recognize that where military involvement is limited and does not invade the traditional functions of civilian law enforcement officers, such as in making arrests, conducting searches or seizing evidence, the coordination of military efforts with those of civilian law enforcement does not violate the PCA. *See Hayes v. Hawes,* 921 F.2d 100, 103 (7th Cir.1990); *see also* Annotation, 141 A.L.R. Fed. 271, § 3[b].

{15} In the case before us, the military involvement in the investigation consisted of the OSI approaching the Metro Drug Task Force with information that members of the Air Force were trafficking and purchasing crack cocaine in the Clovis area. The OSI and the Metro Drug Task Force then agreed to "initiate" a joint investigation of the illegal drug activities. The OSI provided Tobier as an undercover informant to aid in the investigation and to make controlled drug purchases. Tobier was not paid for his assistance in the investigation. During the investigation, he would report to both the OSI and the Clovis Police Department, with his activities being monitored and regulated primarily by the Metro Drug Task Force. For example, Clovis police officers directed Tobier on how to make the controlled purchase from Defendant. They installed a wire on him, searched him and his vehicle before and after the transaction, furnished him money to make the purchase, and monitored him by visual surveillance both to and from the Sheldon residence. At trial, Sergeant Reeves testified that these controls were similar to those imposed on confidential civilian informants assisting police. After completing the controlled purchase, Tobier returned immediately to the Metro Drug Task Force office where he relinquished the drugs to Clovis police officers, and was searched again. Tobier did not participate in any searches or the arrest of Defendant.

{16} Further, it was the OSI that approached the Clovis Police Department, not the police department that approached OSI, for assistance in addressing the drug trafficking problem involving military members in the Clovis area. *See State v. Gunter,* 902 S.W.2d 172, 175 (Tex.Ct.App.1995) (finding no unlawful exercise of military power where it was the military who contacted local law enforcement agency and requested assistance). Although the OSI provided Tobier as an undercover informant, he was subject to the strict controls and regulations imposed primarily by the Clovis Police Department. Moreover, as the State points out in its answer brief, because Tobier did not engage in any search or the arrest of Defendant, his activities were similar to those of a private citizen cooperating with the police in a controlled drug transaction. *See Taylor v. State,* 645 P.2d 522, 525 (Okla.Crim.App. 1982) (applying exclusionary rule where military police officer drew gun during arrest and participated in search of defendant's home). Accordingly, we hold that, under these facts, the role of the OSI and the conduct of Tobier was not sufficiently direct or pervasive to constitute a violation of the PCA.

{17} Under similar facts, courts in other jurisdictions have consistently held that the use of an undercover military agent to assist in the investigation of illegal drug activity involving military members did not violate the PCA because it is sufficiently passive and does not result in the enforcement of civilian laws by the military. *See Hayes,* 921 F.2d at 103 (holding military participation to be sufficiently passive where military agents did not arrest, search or seize evidence, but performed activities similar to those of undercover civilians making controlled purchase); *Bacon,* 851 F.2d at 1313–14 (holding that military participation did not pervade civilian law enforcement or subject citizens to regulatory exercise of military power where Army investigator purchased cocaine from defendant in undercover operation and relinquished it to local authorities); *People v. Wells,* 175 Cal.App.3d 876, 221 Cal.Rptr. 273, 275 (1985) (holding no violation of PCA where military police officers were undercover informants under supervision and surveil-

lance of local police department); *see generally* Annotation, 141 A.L.R. Fed. 271, § 3[b]; *Burkhart v. State*, 727 P.2d 971, 972 (Okla. Crim.App.1986) (holding no violation of PCA where military agent assisted in covert operation with local police, was provided funds by police, purchased marijuana from defendant, and surrendered it to police).

{18} Defendant argues that the OSI's participation in the investigation violated the PCA because Defendant was a civilian with no established connection to the military. In making this argument, Defendant relies primarily on *State v. Pattioay*, 78 Hawai'i 455, 896 P.2d 911 (1995). In *Pattioay*, the court affirmed the grant of a motion to suppress evidence concluding that the joint investigation between the United States Army Criminal Investigation Department (CID) and the local civilian authorities violated the PCA. The court reasoned that there was a violation because the target of the investigation was a civilian, and the state failed to establish a sufficient nexus between the targeted off-base activities and military personnel. *See id.* at 920–21. There, CID had initiated a joint investigation with the local police department based solely on information that a military dependent, who was a civilian, had purchased drugs from other civilians at an off-base location. The court found there to be a lack of military purpose to support the military involvement. *See id.*

{19} We find *Pattioay* to be distinguishable because, in this case, the testimony established that the joint investigation was conducted based on information that active duty Air Force members, not military dependents or other civilians, were involved in the trafficking and purchasing of crack cocaine in the Clovis area. Tobier also testified that he had witnessed members of the Air Force purchasing crack cocaine at the Sheldon residence. Courts have generally agreed that the military has an interest in eliminating or preventing the sale of illegal drugs to active military personnel and, thus, have found this to be a military purpose justifying the participation of the military in drug investigations. *See, e.g., Moon v. State*, 785 P.2d 45, 48 (Alaska App.1990); *see generally* Annotation, 141 A.L.R. Fed. 271, § 5[b].

{20} We note that in *Applewhite v. United States Air Force*, 995 F.2d 997 (10th Cir. 1993), the Tenth Circuit also acknowledged such a military purpose. *Applewhite* involved an undercover "sting" operation by the OSI targeting illegal drug activities by enlisted personnel from Kirtland Air Force Base at an off-base Albuquerque apartment. In holding that there was no violation of the PCA, the court recognized that the PCA "is not intended to limit the military in preventing illicit drug transactions by active duty military personnel, whether such conduct occurs on or off a military installation." *Id.* at 1001. We find *Applewhite* to be persuasive, and conclude that, based on the case law discussed above, the OSI had a military purpose in eliminating and preventing illegal drug sales to active military members in this case. *See Dunham v. Walker*, 60 N.M. 143, 152, 288 P.2d 684, 690 (1955) (noting that Tenth Circuit opinion is not binding on state appellate court but is highly persuasive when supported by reason and logic).

{21} Accordingly, we conclude that the record fails to support a violation of the PCA in this case and that it was rational and plausible for defense counsel to abandon the motion to suppress upon considering the "present state of the law" on the issue of the PCA and concluding that no violation could be established. Moreover, defense counsel's decision to waive the motion to suppress was particularly reasonable given that, even assuming a violation of the PCA could be established, courts have uniformly held that the exclusionary rule still does not apply unless it can be shown that, based on widespread and repeated violations of the act, the evidence should be suppressed for deterrent purposes. *See Hartley*, 796 F.2d at 115; *United States v. Walden*, 490 F.2d 372, 376–77 (4th Cir. 1974); *see generally* Annotation, 141 A.L.R. Fed. 271, § 6. Here, there was no evidence of any history of violations of the PCA in New Mexico. On the contrary, the trial court indicated at both the pretrial conference and the hearing before trial that it was unaware of the PCA issue ever being decided by the court, and defense counsel noted that other district courts had refused to find a violation

of the PCA in other cases in which the issue had been argued.

{22} We, therefore, hold that Defendant has failed to establish a prima facie claim of ineffective assistance of counsel based on counsel's failure to pursue the motion to suppress on PCA grounds. *See Hayes*, 921 F.2d at 104 (rejecting claim that counsel's failure to raise defense based on PCA was ineffective assistance of counsel because even if a violation of PCA occurred, exclusionary rule would not apply). Because we determine that trial counsel's waiver of the motion to suppress evidence was reasonable and does not demonstrate incompetence, we need not reach the issue of whether Defendant was prejudiced by his counsel's abandonment of the motion. *Cf. Stenz*, 109 N.M. at 538, 787 P.2d at 457 (where defendant fails to meet burden of proving incompetence, this Court need not reach issue of prejudicial effect, if any, of trial counsel's failure to move for suppression). Nonetheless, we note that no prejudice can be shown under the facts of this case where, even assuming a violation of the PCA could be established, no grounds exist to invoke the exclusionary rule to the evidence seized.

### 2. Remaining Claims of Ineffective Assistance of Counsel

{23} Defendant further contends that he was denied effective assistance of counsel because trial counsel failed to object to testimony regarding Tobier's identification of Defendant from an impermissibly suggestive photo array, failed to adequately inform Defendant of the trial court proceedings, failed to make himself available to Defendant during the trial preparation, failed to raise the PCA issue at trial, and failed to explain the concept of a speedy trial to Defendant before agreeing to a continuance. Defendant raises these issues pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer*, 103 N.M. 655, 658, 712 P.2d 1, 4 (Ct.App.1985). We briefly discuss these issues.

### a. Photo Identification of Defendant

{24} In determining whether a photo identification is impermissible and should be suppressed at trial, we inquire whether the photo array was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification[.]" *State v. Clark*, 104 N.M. 434, 439, 722 P.2d 685, 690 (Ct.App.1986). If the photo array is determined to be impermissibly suggestive, we further ask whether, "under the totality of the circumstances," the identification was nonetheless reliable. *Id.* We conclude that the photo array in this case was not impermissibly suggestive.

{25} As Defendant admits in his reply brief, Tobier identified Defendant from a showing of, not one, but an array of photographs at the Metro Drug Task Force office immediately after the controlled purchase at the Sheldon residence on July 21, 1994. At trial, Tobier testified that, in identifying individual suspects from the Sheldon residence, he would remember their aliases and keep a "mental picture" of their physical features. When shown the photo array, he would point out the photographs of the individuals he recognized from the Sheldon residence. It was only after the photographs were turned over that Tobier would see the names of the individuals printed on the back side. We cannot conclude from this evidence that the photo array shown to Tobier was impermissibly suggestive.

{26} Moreover, we note that under the totality of the circumstances, the photo identification of Defendant was nonetheless reliable. Tobier had several encounters with Defendant during the investigation and, therefore, had more than sufficient time to observe and recognize his physical appearance and features. Moreover, Tobier testified that he was certain that Defendant was the person who sold him crack cocaine on July 21, 1994, and identified him in court. *See State v. McGruder*, 1997–NMSC–023, ¶¶ 34–36, 123 N.M. 302, 940 P.2d 150 (holding that photo array was not impermissibly suggestive where victim had sufficient time and numerous occasions to observe defendant, identified him immediately, and was certain of identification). Therefore, we find Defendant's claim that the photo identification was impermissible to be without merit.

#### b. Other Issues

{27} Defendant also asserts ineffective assistance of counsel based on trial counsel's failure to keep Defendant adequately apprised of the trial court proceedings, to make himself available by telephone to Defendant during trial preparation, to raise the issue of the PCA at trial, and to explain the concept of a speedy trial to Defendant before agreeing to a continuance of the trial. Because Defendant has not offered any facts of record or citations to authority to support his position on these issues, we do not address them. *See State v. Jim,* 107 N.M. 779, 780, 765 P.2d 195, 196 (Ct.App.1988) (only facts of record will be reviewed on appeal); *In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (issues unsupported by cited authority will not ·be considered on appeal). In sum, because Defendant's photo identification claim lacked merit and Defendant has failed to present evidence in support of the other issues, we conclude that Defendant has failed to make a prima facie showing of ineffective assistance of counsel.

### B. Sufficiency of the Evidence

{28} Finally, Defendant challenges the sufficiency of the evidence to support his conviction. When reviewing a claim of the sufficiency of the evidence, we view the evidence in the light most favorable to the state and resolve conflicts and indulge all inferences to support the verdict. *See State v. Sanders,* 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). We determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). We do not reweigh the evidence or substitute our judgment for that of the fact finder so long as there is sufficient evidence to support the verdict. *See id.*

{29} In this case, Defendant was convicted, following a jury trial, of trafficking in cocaine. To establish Defendant's guilt, the State was required to prove beyond a reasonable doubt that: (1) Defendant "transferred cocaine to another,"; (2) Defendant "knew that it was cocaine or believed it to be cocaine or believed it to be some drug or other substance the possession of which is regulated or prohibited by law,"; and (3) "this happened in New Mexico on or about the 21st day of July, 1994." *See* § 30–31–20(A)(2); UJI 14–3110 NMRA 1998.

{30} At trial, the State presented testimony from Tobier and two Clovis police officers who were involved in the investigation of cocaine trafficking at the Sheldon residence. The testimony established that Tobier observed Defendant at the Sheldon residence on several prior occasions, and that approximately one week before July 21, 1994, Defendant approached Tobier to negotiate a sale of crack cocaine. On July 21, 1994, Tobier received a call from Defendant who stated that he had the crack cocaine available for sale. When Tobier arrived at the Sheldon residence, Defendant came out to Tobier's car and asked him how much crack cocaine he wanted. Tobier replied that he wanted $100 worth. Defendant then left, went inside the house and returned a few minutes later to Tobier's vehicle where Defendant showed and sold Tobier six rocks of crack cocaine which Tobier wrapped in a piece of paper, put in the ashtray and delivered to Clovis police officers. The evidence was then tested by the Department of Public Safety Crime Lab. The tests confirmed, and the parties stipulated, that the substances turned over to the police were in fact cocaine. Tobier identified Defendant in court as the person who sold him the crack cocaine on July 21, 1994. This evidence is sufficient to support Defendant's conviction for trafficking in cocaine. Although Defendant testified that he did not sell any cocaine to Tobier on the day in question, the fact finder was free to reject Defendant's version of the facts, especially in light of the overwhelming evidence to the contrary. *See State v. Vigil,* 87 N.M. 345, 350, 533 P.2d 578, 583 (1975).

### III. CONCLUSION

{31} We hold that Defendant was not denied effective assistance of counsel by trial counsel's failure to pursue the motion to suppress evidence based on the alleged violation of the PCA, failure to object to testimony about the identification of Defendant from a

photo array, or other alleged errors. We also hold that the evidence was sufficient to support Defendant's conviction for trafficking in cocaine. Accordingly, we affirm the trial court's judgment.

{32} **IT IS SO ORDERED.**

DONNELLY and FLORES, JJ., concur.