Carol J. APPLEWHITE,
Plaintiff–Appellee,

v.

UNITED STATES AIR FORCE,
Defendant,

Randall L. Faulkner, Leonard Ross, and
William E. McBride, Defendants–
Appellants.

No. 92–2062.

United States Court of Appeals,
Tenth Circuit.

June 9, 1993.

Rehearing Denied Aug. 10, 1993.

John R. Polk, Albuquerque, NM, for plaintiff-appellee.

Howard S. Scher, Atty., Civ. Div., Appellate Staff, Dept. of Justice (Stuart M. Gerson, Asst. Atty. Gen., Dept. of Justice, Civ. Div., Appellate Staff, Washington, DC, Don J. Svet, U.S. Atty., Albuquerque, NM, Barbara L. Herwig, Atty., Civ. Div., Appellate Staff, Dept. of Justice, Washington, DC, with him on the brief), Washington, DC, for defendants-appellants.

Before KELLY and BARRETT, Circuit Judges, and OWEN, District Judge.*

OWEN, Senior District Judge.

As part of its efforts to deal with illegal drug activity by enlisted personnel on the Kirtland Air Force Base [1], the United States Air Force Office of Special Investigations (OSI) conducted an undercover drug "sting operation" in an off-base Albuquerque, New Mexico apartment on August 1, 1986. The operation was of the "buy-bust" type; any military personnel purchasing drugs was to be immediately arrested. The operation was expected to last only a few hours before its

---

* The Honorable Richard Owen, Senior United States District Court Judge for the Southern District of New York, sitting by designation.

1. Kirtland Air Force Base is located in Albuquerque, New Mexico.

inevitable exposure due to the probable notoriety of any arrests.[2]

The undisputed facts are as follows. Airman First Class William Applewhite, lived with his wife Carol on the Kirtland base. They drove into Albuquerque together; he to buy drugs at the "sting" apartment. Upon arrival at the "sting" apartment, Airman Applewhite went inside and his wife stayed in the car. Once inside, Airman Applewhite asked a woman undercover agent for marijuana[3] saying, "Let me check with Carol and see if she's interested in buying cocaine." He then went down to the car, talked a couple of minutes with Carol and then they both came back up to the apartment. Mrs. Applewhite, a United States Postal Service employee, was wearing her Postal Service uniform at the time. While there is a factual dispute as to whether once inside the apartment Mrs. Applewhite had a conversation with her husband about purchasing drugs for friends and furnished the money for the marijuana,[4] or whether she only asked for, and got a drink of water,[5] Mrs. Applewhite has acknowledged that she was aware her husband's marijuana purchase was going on at a time she was in the same room in the apartment.[6] In any event, her husband was forthwith arrested, and as is routine, and in order to be sure that Mrs. Applewhite posed no threat to the arresting authorities, she was subjected to a pat-down search. During the pat-down search a partially-filled syringe with a hypodermic needle which had been in her knee-high stocking fell out or she pushed it out onto the floor.[7] The search also revealed amphetamines in her purse. She was then handcuffed and both she and her husband were transported by OSI agents back to Kirtland.

Upon arriving at Kirtland, plaintiff was partially strip-searched and interviewed by OSI personnel. When OSI finished questioning her, she was brought to a conference room where her husband was being detained, and was herself detained approximately two to three hours. During this time, a member of the OSI "sting" unit, who at other hours was also a member of the Albuquerque Police Department, called the Albuquerque Police and told them that they had a civilian in custody and asked if they wanted to take over that part of the investigation. The Albuquerque police declined. Mrs. Applewhite was thereupon released. OSI later reported the incident to the United States Postal Service, following which plaintiff lost her job.

Airman Applewhite was court-martialed for the said events of August 1, 1986. Mrs. Applewhite, on the other hand, filed a *Bivens* action for damages[8] against three OSI Officers involved in the "sting", Faulkner, Ross, and McBride, alleging violations of the Posse Comitatus Act[9] and the Fourth and Fifth Amendments to the United States Constitution. The said officers moved for summary judgment on the ground of qualified immunity, contending that their acts did not violate any clearly established statutory or constitutional right of Mrs. Applewhite of which a

---

2. The OSI agents were instructed that any civilian that came on the scene and became involved in the operation could be detained until that person could be turned over to local authorities.

3. There had obviously been some prior experience with the Airman, for the agents expected him to ask for cocaine.

4. OSI Agent Filipovich's testimony.

5. Mrs. Applewhite's testimony.

6. Her testimony was that "[t]hey were doing some sort of an exchange...."

7. When asked on her deposition why there was a syringe in her sock, Mrs. Applewhite testified: "I had found it in my car and I had a habit of carrying stuff in my socks as it was, and I just

kind of stuck it there until I—for some reason I left, I believe."

8. *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Bivens* established that a civilian has a cause of action against a federal official in his individual capacity for damages to the civilian arising out of the federal official's violation of federal constitutional law.

9. The Posse Comitatus Act, 18 U.S.C. § 1385, states:

Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

reasonable person would have known, citing *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The District Court denied the officers' motion on Posse Comitatus Act grounds stating that "military law enforcement officers generally know that it is clearly established law that they have absolutely no authority to go outside the confines of a military installation and arrest a civilian, transport her to a military installation, detain and strip search her." [10]

■ This appeal followed pursuant to 28 U.S.C. § 1291.[11] We review legal determinations of the Court below *de novo* resolving any material factual issues in favor of Mrs. Applewhite. *Austin v. Hamilton,* 945 F.2d 1155, 1158 (10th Cir.1991). The defendants having raised the qualified immunity defense, the burden is on the plaintiff to marshal facts showing that (1) the defendants' conduct violated the law, and (2) the law was clearly established when the violation occurred. *See Siegert v. Gilley,* —— U.S. ——, ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Snell v. Tunnell,* 920 F.2d 673, 696 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991). Plaintiff having endeavored such a showing, defendants must then establish that no material facts preclude summary judgment on the basis of qualified immunity. *Salmon v. Schwarz,* 948 F.2d 1131, 1136 (10th Cir.1991).

It is now well established that a law-enforcement official is entitled to qualified immunity if his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S., at 818, 102 S.Ct. at 2738 (citations omitted). Subsequently, *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1986), stated, "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, *Harlow,* 457 U.S., at

819 [102 S.Ct. at 2739], assessed in light of the legal rules that were 'clearly established' at the time it was taken, *id.,* at 818 [102 S.Ct. at 2738]." *Anderson* further stated, "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ...; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* 483 U.S. at 640, 107 S.Ct. at 3039 (citations omitted). And even more recently, in *Hunter v. Bryant,* —— U.S. ——, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991), the Court stated how the standard is to be viewed.

> The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' ... This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued.

*Hunter,* —— U.S. at ——, 112 S.Ct., at 537 (citations omitted).

■ Here, the military having set up a "sting" for errant military personnel, Airman Applewhite came into the "sting" apartment and sought to buy marijuana. Unexpectedly, the Airman brought his civilian wife up from the car and thereafter concluded the exchange in her presence. Upon his being immediately busted, the search of his wife was reasonable to be sure she posed no threat to the agents. *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). That search revealed her possession of a partially-filled hypodermic and needle in her stocking, and amphetamines in her handbag. The totality of the foregoing made it reasonable for the agents to regard her as a participant with him in a narcotics buy and

---

10. *Applewhite v. U.S. et al.,* No. 88–0821, slip op. at 2 (D.N.M. Mar. 19, 1992).

11. "The entitlement to qualified immunity 'is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.' " *Pueblo Neighborhood Health*

*Centers, Inc. v. Losavio,* 847 F.2d 642, 644 (10th Cir.1988) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis in original)). Accordingly, an immediate appeal may be taken from a denial of immunity.

remove her *somewhere* while the Albuquerque Police were contacted to see if they would take over this civilian intruder/participant in the military "sting." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 226, 13 L.Ed.2d 142 (1964); *United States v. Allen,* 986 F.2d 1354, 1357 (10th Cir.1993); *United States v. Romero,* 692 F.2d 699, 703 (10th Cir.1982). The agents were not required to let her go, given what they had learned about her, nor were they required to hold her in the "sting" apartment or in a car while waiting for an answer from the Albuquerque Police Department. Accordingly, the removal to the base with her husband was, we conclude, reasonable. Given all this, the partial strip search at the base was the product of particularized, reasonable suspicion and was not unreasonable, particularly in view of what the patdown search at the apartment had already revealed. *Chapman v. Nichols,* 989 F.2d 393, 396, 398–99 (10th Cir.1993).

 The Posse Comitatus Act is clearly designed to restrict military involvement in civilian law enforcement. *United States v. Walden,* 490 F.2d 372, 375 (4th Cir.1974), *cert. denied,* 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 760 (1974). It is not intended to limit the military in preventing illicit drug transactions by active duty military personnel, whether such conduct occurs on or off a military installation. *Hayes v. Hawes,* 921 F.2d 100 (7th Cir.1990), *Harker v. State,* 663 P.2d 932, 936 (Alaska 1983). Since there was an independent military purpose to OSI's conduct, there was necessarily no wilful use of any part of the Air Force as a posse to execute civilian laws, nor did military law enforcement officers go outside the confines of a military installation to arrest a civilian as the Court below viewed it. The agents went off base to "sting" military personnel, not civilians. Mrs. Applewhite's husband, not the military, was responsible for the involvement of his civilian wife. This being established on the undisputed facts on this record, there was no violation by the OSI agents of any "clearly established statutory rights" of Mrs. Applewhite.

As to her claim that the OSI agents violated some clearly established *constitutional* rights under the Fourth and Fifth Amendments—a ground the Court below did not reach—we but observe that based on the said undisputed facts,—she having been brought in to the point of sale by her buyer husband, and the contraband thereafter found on her person, it was objectively reasonable for the agents to detain the plaintiff somewhere long enough to inquire as to whether civilian authorities had any interest in taking over any prosecution. In these circumstances, the agents could hardly have justified her immediate release just because she was a civilian. *United States v. Ortiz,* 966 F.2d 707 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1005, 122 L.Ed.2d 154 (1993); *United States v. Lema,* 909 F.2d 561 (1st Cir.1990); *United States v. Banks,* 539 F.2d 14, 16 (9th Cir.), *cert. denied,* 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976).

Accordingly, there having been no violation of plaintiff's rights in either the statutory or constitutional areas, *Harlow v. Fitzgerald, supra,* mandates the grant of qualified immunity to the agents.

Accordingly, the order of the District Court denying summary judgment to the appellant agents is reversed, and the action is remanded to the District Court with directions to grant summary judgment to Officers Ross, McBride, and Faulkner dismissing the action on the grounds of qualified immunity.