51 F.3d 932
 67 Fair Empl.Prac.Cas. (BNA) 720
 Ann FURNACE, Plaintiff-Appellee,
v.
OKLAHOMA CORPORATION COMMISSION, an Oklahoma state agency;
Thomas H. Tucker, Assistant General Counsel, individually
and in his official and personal capacities; Lindil C.
Fowler, Jr., General Counsel, individually and in his
official and personal capacities; Robert Goldfield,
Administrative Law Judge, individually and in his official
and personal capacities; Anita Heaton, Administrative
Assistant I, individually and in her official and personal
capacities; Bob Anthony, Corporation Commissioner,
individually and in his official and personal capacities;
Bob Hopkins, Ex-Corporation Commissioner, individually, and
in his official and personal capacities, Defendants,
and
Thaddeus Johnson, General Administrator, individually and in
his official and personal capacities, Defendant-Appellant.
 No. 94-6084.
 United States Court of Appeals,
Tenth Circuit.
 April 6, 1995.
 
 Michael S. Homsey and Terry R. McMillan, Oklahoma City, OK, for appellee.
 Shawn S. Taylor of Riggs, Abney, Neal, Turpen, Orbison & Lewis, Oklahoma City, OK, for appellant.
 Before KELLY, BRIGHT,* and BARRETT, Circuit Judges.
 BARRETT, Senior Circuit Judge.
 
 
 1
 Thaddeus Johnson (Johnson) appeals from a memorandum opinion and order entered by a magistrate judge denying Johnson's motion for summary judgment in this 42 U.S.C. Sec. 1983 civil rights action. A review of the relevant facts follows.
 
 Facts
 
 2
 Johnson, a black man, was the General Administrator of the Oklahoma Corporation Commission (OCC), a public employer, during the late 1980's and early 1990's. Ann Furnace (Furnace), a black woman, began working at the OCC in 1983. In 1990, she was employed as a Public Utility Coordinator, responsible for handling consumer complaints within the Complaints Division. Furnace supervised five workers, including Anita Heaton (Heaton), a white woman.
 
 
 3
 Furnace displayed four prints in her OCC office. The prints were: a Norman Rockwell print depicting a young black girl being escorted to school by four marshals and a brick wall on which the word "nigger" was written; a Norman Rockwell print depicting the arrival of a new family in a neighborhood, showing a group of three black children with a white cat looking at a group of three white children with a black dog; a picture of Nelson Mandella with his fist in the air captioned "and freedom for all;" and a picture of Martin Luther King, Jr.
 
 
 4
 On August 27, 1990, Heaton filed a grievance against Furnace in which she alleged, inter alia, that:
 
 
 5
 I feel that Mrs. Furnace is racially prejudiced against caucasions [sic]. That she keeps racially inflamatory [sic] material on display in her office which is a State Office. That Mrs. Furnace has stated to me, in relation to promotions or new openings in the Commission, that I am the "wrong color"; that all high level openings will be filled with black applicants in order to offset claims by a black political candidate ... that the Commission's labor force is racially unbalanced. That Mrs. Furnace makes frequent comments about the treatment of blacks in the 1950's. That Mrs. Furnace takes immediate offense and over-reacts to any mention of the black race.
 
 
 6
 * * * * * *
 
 
 7
 [I request] [t]hat Mrs. Furnace remove all pictures and literature from her office which are racial in nature, more specifically the Norman Rockwell prints depicting problems with integration and the picture of Nelson Mandella giving the "black power salute". That Mrs. Furnace be required to treat all consumer-customers and employees with respect and equality regardless of their race.
 
 
 8
 (Appendix at 0048).
 
 
 9
 Thereafter, Johnson met with Furnace in his office "for the purpose of settling the discrimination allegations of the grievances." Id. at 0193. During the meeting Johnson told Furnace that "I realize that I'm violating your civil rights."[1] Id. At the end of the meeting, Heaton was called to Johnson's office and a confidential memorandum was signed by Johnson, Furnace, and Heaton. The memorandum stated that "[o]n September 12, 1990, at approximately 3:00 p.m., resolution was made in agreement with the grievant, Ms. Anita Heaton." Id. at 0071.
 
 
 10
 The agreement required Furnace to remove the two Norman Rockwell prints and to apologize to Heaton. Id. at 0194. Although it is unclear whether the agreement also required Furnace to remove the pictures of Mandella and King, Furnace returned to her office after the meeting and removed all four items. After the meeting, Furnace contends that Johnson stated that he was glad that he had held against a black woman instead of a white woman. Id.
 
 Litigation
 
 11
 Thereafter, Furnace filed this action against the OCC, Johnson, and others in which she alleged, inter alia, that Johnson and others had deprived her of her First Amendment rights in violation of Sec. 1983 by forcing her to remove the four prints from her office. Furnace sought damages, attorneys's fees, and "prospective relief, to-wit: an Order prohibiting and forbidding Defendants from discriminating against her in the future and requesting a change in policy to safeguard against such discrimination." Id. at 0006.
 
 
 12
 Johnson moved for summary judgment, contending: if the prints were considered speech, they were speech of private concern and not public concern; speech of private concern was not entitled to First Amendment protection; and, the absolute defense of qualified immunity precluded trial.
 
 
 13
 In denying Johnson's motion, the magistrate judge concluded that: the prints "may reasonably be viewed as speech in protest of racial segregation and in encouragement of racial equality and integration and thus, speech on a matter of public concern," (Appendix at 0198); since the prints may be viewed as speech on matters of public concern, it becomes defendants' responsibility to demonstrate that the interest of the government in the efficient functioning of Furnace's office outweighs Furnace's right of free speech; "[t]he government must produce evidence of an actual disruption of services which results from the employee's speech," Schalk v. Gallemore, 906 F.2d 491, 496 (10th Cir.1990);[2] and "... Defendants have failed to demonstrate that the office was disrupted by the pictures to the extent that its efficient functioning was impaired in any way.[3] Thus, the court concludes that Plaintiff's first amendment interest in her speech outweighs the Defendants' interest in preventing it. The foregoing conclusion is not a determination of liability, however, and the court will next address the other issues and defenses raised by Defendants' motions." (Appendix at 0200) (footnotes added).
 
 
 14
 In addressing the Defendants' qualified immunity defense, the magistrate judge found: once a defendant has raised the question of qualified immunity, "the burden is on the plaintiff to marshal facts showing that (1) the defendants' conducted violated the law, and (2) the law was clearly established when the violation occurred," citing Applewhite v. United States Air Force, 995 F.2d 997, 1000 (10th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1292, 127 L.Ed.2d 646 (1994) (citations omitted); and that although Furnace's right to free speech was violated, Furnace "has not shown that it was clearly established that the forced removal of pictures such as these would violate an employee's right of free speech, nor has [she] demonstrated that a reasonable official would even have recognized the pictures at issue as speech." (Appendix at 0202).
 
 
 15
 The magistrate judge concluded that under these circumstances, the motion for summary judgment based on qualified immunity, filed by ex-corporation commissioner and co-defendant Bob Hopkins, should be granted as to Furnace's claims under Sec. 1983. The magistrate judge also concluded, however, that inasmuch as Johnson had not disputed Furnace's testimony that Johnson had told her during the settlement meeting that he knew that he was violating her civil rights, "it must remain for a jury to determine whether the statement was made and the meaning of it ... [and, i]n light of his alleged statement, the court finds that Johnson is not entitled to summary judgment on the basis of qualified immunity on this claim." Id. at 0204. The court stated that there was "no merit to Defendant Johnson's other arguments for judgment in his favor on this claim." Id.
 
 Issues on Appeal
 
 16
 On appeal, Johnson contends that: (1) the displaying of the prints was not clearly established as speech requiring a first amendment analysis and that even if displaying the prints is considered speech, Furnace did not meet her burden of showing that the law was clearly established that the speech was of public concern; (2) the law was not sufficiently clear that Johnson should have known that the state's interest would not survive a balancing test; and (3) no material fact remains at issue that precludes granting Johnson's motion for summary judgment on the basis of qualified immunity.
 
 Standard of Review
 
 17
 Qualified immunity "is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) (emphasis original). On appeal, we review the denial of qualified immunity de novo. Walter v. Morton, 33 F.3d 1240, 1242 (10th Cir.1994); Powell v. Gallentine, 992 F.2d 1088, 1090 (10th Cir.1993). The plaintiff carries the burden of convincing the court that the law was clearly established. Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 645 (10th Cir.1988). Immunity is not a jury question; it must be decided as a matter of law by the court. Hunter v. Bryant, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).
 
 Disposition
 I.
 
 18
 Johnson contends that displaying the prints was not clearly established as speech and that even if displaying the prints was considered speech, Furnace did not meet her burden of showing that the law was clearly established that the speech was of public concern. The magistrate judge resolved both of these issues in favor of Johnson, finding:
 
 
 19
 .. to defeat Defendants' [Johnson and Hopkins] claim to qualified immunity, Plaintiff must demonstrate that the law was clearly established when the violation occurred.... However, Plaintiff has not shown that it was clearly established that the forced removal of pictures such as these would violate an employee's right of free speech, nor has Plaintiff demonstrated that a reasonable official would even have recognized the pictures at issue as speech. Under the undisputed material facts, a reasonable official could have interpreted the presence of the pictures as merely preferred office decor or simply art depicting matters of historical significance.
 
 
 20
 (Appendix at 0202).
 
 II.
 
 21
 Johnson argues that the law was not sufficiently clear to determine that he should have known that the state's interest would not survive a balancing test. The magistrate judge found that since Furnace had not carried her burden of showing that the law was clearly established at the time the violation occurred, "this Court need not address the second half of the question set out in Considine [v. Board of County Comm'rs, 910 F.2d 695, 702 (10th Cir.1990) ], namely whether a reasonable official should have known that the government's interest in the efficient functioning of the office would be insufficient to outweigh the speaker's first amendment rights." (Appendix at 0203 n. 16).
 
 
 22
 Furnace has not cross-appealed the above findings. Thus, we accept them as undisputed. Hein v. TechAmerica Group, Inc., 17 F.3d 1278, 1279 (10th Cir.1994). Accordingly, our discussion will be limited to the remaining dispositive issue (3), i.e., whether the district court erred in denying Johnson's motion for summary judgment on the basis of qualified immunity.
 
 III.
 
 23
 "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Ramirez v. Oklahoma Dep't of Mental Health, 41 F.3d 584, 592 (10th Cir.1994) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). As the magistrate judge observed, once a defendant raises the doctrine of qualified immunity, "the burden is on the plaintiff to marshal facts showing that (1) the defendants' conduct violated the law, and (2) the law was clearly established when the violation occurred." Applewhite, 995 F.2d at 1000.
 
 
 24
 As set forth, supra, the magistrate judge found that Furnace had "not shown that it was clearly established that the forced removal of pictures such as these would violate an employee's right of free speech, nor [had Furnace] demonstrated that a reasonable official would even have recognized the pictures at issue as speech." (Appendix at 0202). Thereafter, although both Johnson and co-defendant Hopkins moved for summary judgment based on qualified immunity as to Furnace's Sec. 1983 claims, the court granted Hopkins' motion but denied Johnson's motion. In so doing the magistrate judge ruled:
 
 
 25
 As for the Defendant Johnson, Plaintiff testified that he told her at their settlement meeting that he knew he was violating her civil rights.[17] This allegation does not prevent Defendant Johnson from raising the defense of qualified immunity, nor does Plaintiff contend that it does. However, it does preclude granting summary judgment because it must remain for a jury to determine whether the statement was made and the meaning of it.
 
 
 26
 (Appendix at 0203-04).
 
 
 27
 In Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970), the plaintiff alleged racial discrimination in violation of her equal protection rights. The Court held that proof of two elements is necessary for recovery under Sec. 1983:
 
 
 28
 First, the plaintiff must prove that the defendant deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any state or territory."
 
 
 29
 The Constitution and the laws of the United States secure a "right" to free speech. However, this right is not absolute, as noted below.
 
 
 30
 In analyzing Furnace's claims, the magistrate judge apparently did not attach any significance to the fact that Furnace was dealing directly with the consumer public in the Complaints Division. However, we view this fact as very significant. In Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983), the Court observed:
 
 
 31
 Public property which is not by tradition or designation a forum for public communication [such as places by long tradition devoted to assembly and debate open to the public] is governed by different standards. We have recognized that the "First Amendment does not guarantee access to property simply because it is owned or controlled by the government." [citation omitted]. In addition to time, place, and manner regulations, the State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.... As we have stated on several occasions, " "[t]he State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." " [citations omitted].
 
 
 32
 In Members of the City Council v. Taxpayers for Vincent, 466 U.S. 789, 812, 104 S.Ct. 2118, 2132, 80 L.Ed.2d 772 (1984), the Court upheld an ordinance prohibiting posting of signs on city property against a political candidate's contention that it violated his First Amendment rights. The Court held that:
 
 
 33
 While the First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places ... a restriction on expressive activity may be invalid if the remaining modes of communication are inadequate ... to the extent that the posting of signs on public property has advantages over [other] forms of expression ... there is no reason to believe that these advantages cannot be obtained through other means.
 
 
 34
 Although the magistrate judge's conclusion of law that Furnace's First Amendment interest in her speech outweighs the defendants' interest in preventing it is not directly challenged on appeal, we observe that almost all reported cases involving First Amendment speech by an employee arising at the employer's workplace deal with matters relating to the workplace. See, e.g., Schalk, 906 F.2d 491; Starrett v. Wadley, 876 F.2d 808 (10th Cir.1989) (employee complained to defendant Wadley, then to Wadley's attorney, and to Chairman of the Board of County Commissioners about Wadley's sexual harassment of her at the workplace); Wulf v. City of Wichita, 883 F.2d 842 (10th Cir.1989) (Wulf, a member of city police department, spoke out in favor of membership in the Fraternal Order of Police contrary to wishes of superiors); Schneider v. City of Atlanta, 628 F.2d 915 (5th Cir.1980) (city employee suggested to fellow employees that they organize a "sick out" in protest to alleged improper treatment of prisoners), overruled on other grounds by Bennett v. City of Slidell, 735 F.2d 861 (5th Cir.1984), cert. denied, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985); Mabey v. Reagan, 537 F.2d 1036 (9th Cir.1976) (employee stated during an academic senate meeting that college was run by a "jerk" and a lot of older "punks").
 
 
 35
 Other reported cases of First Amendment speech relate to conditions of employment such as salary, benefits, safety conditions, or criticism of superiors or co-employees. See, e.g., Barkoo v. Melby, 901 F.2d 613 (7th Cir.1990); Dwyer v. Smith, 867 F.2d 184 (4th Cir.1989); Jones v. Georgia, 725 F.2d 622 (11th Cir.), cert. denied, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 316 (1984); Berdin v. Duggan, 701 F.2d 909 (11th Cir.), cert. denied, 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983); Cooper v. Johnson, 590 F.2d 559 (4th Cir.1979); Kannisto v. City & County of San Francisco, 541 F.2d 841 (9th Cir.1976), cert. denied, 430 U.S. 931, 97 S.Ct. 1552, 51 L.Ed.2d 775 (1977).
 
 
 36
 Turning to qualified immunity directly, we recognize that "[a]ll [the court] need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions." Mitchell, 472 U.S. at 528, 105 S.Ct. at 2816. Once the magistrate judge determined that the law was not clearly established, Johnson was entitled to summary judgment on the basis of qualified immunity.
 
 
 37
 Accordingly, we hold that the magistrate judge erred in denying Johnson's motion for summary judgment on the basis of his statement that he knew he was violating Furnace's civil rights. The statement was irrelevant to the efficacy of Johnson's qualified immunity defense.
 
 
 38
 REVERSED and REMANDED for further proceedings consistent herewith.
 
 
 
 *
 The Honorable Myron H. Bright, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 The magistrate judge accepted this language as true for purposes of resolving Johnson's qualified immunity defense, inasmuch as Johnson did not dispute it
 
 
 [2]
 Schalk was fired from her job with a municipally owned hospital for writing letters and speaking with hospital board trustees relative to "... waste, inefficiency, and favoritism at the hospital." 906 F.2d at 495. In Rankin v. McPherson, 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987), the Court held that in balancing the interests of the employee in commenting upon matters of public concern and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees, pertinent considerations include "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise."
 
 
 [3]
 However, we observe that the prints were disruptive to Heaton, a co-worker who must work closely with Furnace
 
 
 [17]
 This testimony is taken as true for the purpose of resolving Defendants' dispositive motions as Defendant Johnson has not disputed it