F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**JAN 29 1998**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

LEONARD NASH,

     Plaintiff - Appellant,

vs.

LARRY FIELDS; JOHN WILLIAMS;
DR. ROSSAVIK; DR. DILLENGAST;
DR. MOON; CHARLOTT FORD;
LOVE; JOHN DOE, Medical
Administrator; JOHN DOE, Facility
Head; ZORA IRACINI,

     Defendants - Appellees.

No. 97-6204
(D.C. No. CIV-95-522-C)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY**, **EBEL**, and **KELLY**, Circuit Judges.[**]

---

Plaintiff-appellant Leonard Nash, a state prisoner proceeding pro se and in

forma pauperis pursuant to 28 U.S.C. § 1915(b) (providing for payment in

installments of full fee), appeals from summary judgment on his 42 U.S.C. § 1983

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

claim for violation of his Eighth Amendment right to adequate medical care. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

Background

In the latter part of May of 1993, Mr. Nash began complaining of pain and decreased range of motion of his left shoulder. On May 24, 1993, Dr. Roye of Oklahoma Memorial Hospital (OMH) noted impingement of Mr. Nash's left shoulder and scheduled him for an arthrogram on June 16, 1993, which would confirm or rule out the possibility of a rotator cuff tear. The following day, prison officials notified Mr. Nash he was eligible for release into the community through Oklahoma's voluntary Specialized Supervision Program (SSP). Mr. Nash signed the form acknowledging his eligibility and recommendation for release, as well as SSP Rules and Conditions which stated, "I understand that I am responsible for my own medical care and all medical expenses incurred by me upon my release."

On June 23, 1993, an arthrogram revealed no signs of rotator cuff tear. Mr. Nash alleges that he was later scheduled for left shoulder acromioplasty on August 5, 1993, but Defendants deny knowledge of the scheduling, and corrections records do not reflect the scheduled surgery. Mr. Nash was released into SSP on August 10, 1993, without undergoing this surgery, and he was unable to procure the surgery while on SSP release. In May 1994, Mr. Nash violated the

terms and conditions of SSP and was re-incarcerated.  DOC resumed provision of medical care and provided the acromioplasty surgery on January 24, 1995.

## Discussion

We review summary judgment rulings de novo, applying the same standard as the district court.  See Bell v. United States, 127 F.3d 1226, 1228 (10th Cir. 1997).  Summary judgment may be granted if the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  While applying this standard, we view the evidence in the light most favorable to, and draw all reasonable inferences from the evidence in favor of, the non-movant.  See Bell, 127 F.3d at 1228.  The moving party is "entitled to judgment as a matter of law" if on the undisputed facts there is insufficient evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Defendants assert summary judgment was proper on the basis of qualified immunity.  Government officials are immune from suit respecting discretionary functions they perform, unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fiztgerald, 457 U.S. 800, 818 (1982).  Plaintiff bears the initial burden of

showing that Defendants' actions violated clearly established law at the time the violation occurred. See Applewhite v. United States Air Force, 995 F.2d 997, 1000 (10th Cir. 1993), cert. denied, 510 U.S. 1190 (1994). Ordinarily, for the law to be clearly established in this sense, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).

The Eighth Amendment's prohibition of cruel and unusual punishment imposes on the government an affirmative duty to provide adequate medical care to those it has incarcerated because they are unable to procure care for themselves. See U.S. Const. amd. VIII; Estelle v. Gamble, 429 U.S. 97, 103 (1976). A claim of violation of this duty must satisfy a two-prong test having both subjective and objective components. A prisoner's Eighth Amendment right to medical care is violated if (1) prison officials manifest a "deliberate indifference" to his medical needs and (2) those needs are "serious." Id. at 104; Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). A "serious" medical need is one that has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. See Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981).

Prior to his release, rather than being denied access to or provision of medical care, Mr. Nash indisputably received extensive medical attention. Mr. Nash advances no evidence that Defendants knew of his alleged August 5 surgery appointment. Even if they did, it is not clearly established that they were deliberately indifferent in delaying his surgery for five days until Mr. Nash was released and at liberty to seek care in the community. See Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993) (holding eleven-day delay in providing elective surgery not deliberately indifferent); Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987) (holding brevity of incarceration is a permissible factor in decision to provide elective surgery), cert. denied, 485 U.S. 991 (1988); Delker v. Maass, 843 F. Supp. 1390, 1400 & n.6 (D. Or. 1994). Moreover, Mr. Nash has not marshaled evidence to show that any delay caused him "substantial harm" as required to show deliberate indifference in cases involving delay. See Stotts, 9 F.3d at 1477.

Further, Mr. Nash has failed to establish that he had a sufficiently urgent medical need, as contemplated by the definition of "serious" in Ramos, so that it would have violated the Eighth Amendment to defer the surgery. See Ramos, 639 F.2d at 575; Caldwell v. Moore, 968 F.2d 595, 602 (6th Cir. 1992). Rather, the law allows the type and amount of care to be determined on a case-by-case basis. See Johnson v. Bowers, 884 F.2d 1053, 1056 (8th Cir. 1989) (weighing

seriousness, consequences of denial, and length of delay); Delker, 843 F. Supp at 1400 & n.6. In Mr. Nash's case, the more urgent concern about a possible rotator cuff tear had been ruled out, he had been determined eligible for, recommended for, and indicated his voluntary choice to be released into the community via SSP, and actually was released five days later. In addition, assuming the August 5 surgery was scheduled, Dr. Roye did not schedule it immediately, but over a month hence.

As for the period during which Mr. Nash was released, there has been no showing that DOC officials or medical personnel had a duty to provide medical care to those released under the SSP program. Mr. Nash cites no authority suggesting such a duty and our research uncovers none. Rather, the rationale of Estelle that the duty arises based on inmates' isolation from the community militates against any such duty when persons are released into the community. See Estelle, 429 U.S. at 103.

Finally, Mr. Nash has not shown Defendants were deliberately indifferent after his re-incarceration to a serious medical need. After his re-incarceration, Mr. Nash received a steady stream of medical appointments for treatment, examination, evaluation, preparation for surgery, the acromioplasty surgery itself, and post-operative care. An Eighth Amendment claim is not cognizable and sufficiently clear to overcome qualified immunity where the plaintiff receives

progressive, conservative care short of the most invasive procedure, surgery with general anesthetic, and ultimately receives the sought-after surgery.  See Estelle, 429 U.S. at 107 (stating matters of medical judgment do not give rise to a § 1983 claim); Ramos, 639 F.2d at 575 (concluding mere disagreement with medical staff over diagnosis or treatment is insufficient to state an Eighth Amendment claim).

AFFIRMED.


Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge